1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                        EASTERN DISTRICT OF CALIFORNIA
10                              ----oo0oo----
11
12   THE WINE GROUP LLC, a Delaware        NO. CIV. 2:11-1704 WBS JFM
     limited liability company,
13
               Plaintiff,                  MEMORANDUM AND ORDER RE:
14                                         MOTION TO DISMISS OR TO
          v.                               TRANSFER
15
     LEVITATION MANAGEMENT, LLC, a
16   Nevada limited liability
     company; and TIPTON SPIRITS,
17   LLC, d/b/a Desirée Vodka
     Company, LLC, an Indiana
18   limited liability company,
19             Defendants.
                                     /
20
21                              ----oo0oo----
22
23        Plaintiff The Wine Group LLC ("TWG") brought this
24   trademark infringement action against defendants Levitation
25   Management, LLC ("Levitation"),[1] and Tipton Spirits, LLC, d/b/a
26   Desirée Vodka Company, LLC ("Tipton").  Defendants move to
27        [1]  According to defendants, the name of this company is
     Levitation Marketing, LLC, not Levitation Management, LLC, as
28   captioned in the Complaint.

                                    1

dismiss for lack of personal jurisdiction pursuant to Federal
Rule of Civil Procedure 12(b)(2) or, alternatively, to transfer
to the Southern District of Indiana for improper venue pursuant
to 28 U.S.C. § 1406(a).

I.   Factual and Procedural Background

Plaintiff, a Delaware limited liability company with
its principal place of business in Tracy, California, produces,
imports, and markets wine, vodka, and other alcoholic beverages.
(Compl. ¶¶ 3, 7.)  Its products are advertised, distributed, and
sold throughout the United States.  (Id. ¶ 7.)

In 2007, plaintiff launched a brand of wine called
"Cupcake."  (Id. ¶ 8.)  Plaintiff has registered "Cupcake" as a
trademark.  (Id. ¶ 15.)  In 2010, plaintiff created a sub-brand
of Cupcake wine called "Red Velvet."  (Id. ¶ 12.)

After allegedly great nationwide success with the
Cupcake wine, plaintiff decided to create a Cupcake brand of
vodka in 2010 and launched the Cupcake vodka in April of 2011.
(Id. ¶ 16.)  Plaintiff has registered "Cupcake" as a trademark
for spirits.  (Id. ¶ 18.)

According to plaintiff, California is the largest
market for vodka in the United States and plaintiff sells more
Cupcake wine, Cupcake Red Velvet wine, and Cupcake vodka in
California than any other state.  (Lizar Decl. ¶¶ 3-7.)

In early 2010, defendants created a "Desirée" brand of
vodka.  (Compl. ¶ 19.)  Levitation is a Nevada limited liability
company, (id.), with its principal place of business in Brazil,
Indiana.  (Knight Decl. I ¶ 5.)  "It is a marketing consulting
agency that owns the DESIRÉE trademark, the other trademarks at

2

1    issue [], and the domain name desireevodka.com."  (Compl. ¶ 4.)

2    Tipton, an Indiana limited liability company, "is responsible for

3    the sales and marketing of the [Desirée vodka.]"  (Id. ¶ 5.)

4    Tipton's principal place of business is in Brazil, Indiana.

5    (Knight Decl. I ¶ 8.)

6         Plaintiff takes issue with two of defendants' sub-

7    brands of Desirée vodka: "On one vodka, Defendants use the

8    trademark CUPCAKE and a large depiction of a cupcake, and on the

9    other Defendants use the trademark RED VELVET and a large

10   depiction of a slice of a layer cake."  (Compl. ¶ 20.)

11        In February of 2011, before defendants had launched

12   their vodka, plaintiff informed defendants by letter of its

13   trademark registration and pending application and asked

14   defendants to change their labels.  Defendants were informed that

15   plaintiff is located in California.  The parties exchanged a

16   series of communications in which defendants disputed that their

17   use of "Cupcake" or "Red Velvet" was improper.  In April of 2011,

18   defendants launched their vodka and did not change their labels.

19   (See Reidl Decl. ¶¶ 2-7; Compl. ¶¶ 23-27.)

20        The Complaint alleges the "[a]cts giving rise to the

21   claims asserted herein have been expressly aimed at, have

22   occurred in, and will continue to occur in California and this

23   District," (Compl. ¶ 2), and that California and this district

24   are the place of injury.  (Id. ¶ 3.)

25        Plaintiff has not alleged that defendants sell their

26   vodka in California.  According to defendants, they currently

27   sell their vodka in seven states.  (Knight Decl. I ¶ 15.)

28   Defendants' vodka cannot be purchased through their website.

1   (Id. ¶ 28, Ex. 1.)

2          Plaintiff alleges that defendants "are in the process
3   of rolling out CUPCAKE and RED VELVET vodka and seeking
4   distributors on a national basis, including in California.   The
5   Defendants' DESIRÉE vodka competes directly with TWG's CUPCAKE
6   vodka."  (Compl. ¶ 21.)

7          Defendants admit to engaging in one unsuccessful
8   discussion with a California-based distributor, which resides in
9   this district, that touched on defendants' vodka.  (See Knight
10  Decl. I ¶¶ 21-22.)  Defendants' website states that their
11  products will be "Coming soon" to every state.  (Id. Ex. 1.)

12         In support of their allegation that defendants market
13  and promote their vodka in California, (see Compl. ¶ 21),
14  plaintiff relies heavily on defendants' Internet activity.
15  Defendants maintain a website, www.desireevodka.com, at which
16  visitors are invited to contact defendants to receive additional
17  information.  (Knight Decl. I Ex. 1.)  The website includes
18  "metatags" for "Cupcake Vodka" and "Red Velvet Vodka."  (Lizar
19  Decl. ¶ 8; Knight Decl. II ¶ 14.)  Plaintiff alleges that the
20  metatags "ensure that references to Defendants' vodka will appear
21  whenever a consumer searches for TWG's wine or vodka."  (Compl. ¶
22  26.)  However, according to defendants, a recent search on the
23  search engine Google for "cupcake vodka" only yielded results
24  related to plaintiff on the first two pages; the third page
25  contained results related to defendants.  (Knight Decl. II ¶ 14,
26  Ex. A.)  Defendants' website invites visitors to "follow"
27  defendants on the website of Facebook, a California company, and
28  provides a link to their Facebook page.  (Knight Decl. I Ex. 1.)

1    Defendants have created a Facebook page that allows
2 defendants to post information about their products. (Knight
3 Decl. I ¶ 29.)   The page also permits website users to post
4 messages to defendants and defendants to respond to users
5 messages. (Knight Decl. I, Ex. 2.)  Defendants also use the
6 Facebook page to solicit applications for "Brand Ambassadors" it
7 hires to promote defendants' products. (<u>Id.</u>)

8    The parties dispute how Facebook functions and how
9 defendants have used it.  According to plaintiff, "each [Facebook
10 "friend"] will receive all updates posted by the other person on
11 their respective homes pages." (Lizar Decl. ¶ 14.)
12 Plaintiff claims that the owner of a Facebook page must first
13 "accept" a "friend request" and can "delete" a "friend." (<u>Id.</u> ¶¶
14 14, 16-17.)  Plaintiff contends that only a "friend" can
15 determine where another "friend" resides.[2] (<u>Id.</u> ¶ 15.)

16    Plaintiff's counsel, a resident of this district,
17 "friended" defendants and has since "automatically receive[d] all
18 communications posted to the Facebook page by Defendants,"
19 including an entry referring to "Cupcake Vodka" and "Red Velvet
20 Vodka." (Reidl Decl. ¶¶ 12-13.)  Plaintiff's counsel notes two
21 entries on defendants' page by "friends" of defendants who
22 indicate that they live in California.  One entry from a "friend"
23 in Bakersfield, California, simply said that defendants' vodka

24

_____

25    [2]   According to defendants, defendants' Facebook page only
allows a Facebook user to "like" or "follow" or become a "fan" of
26 defendants.   In other words, defendants do not "accept" "friend
requests."   Defendants can only restrict Facebook "fans" by age
27 and country, and defendants can only view information on a user's
profile that the user has made "public," which may or may not
28 include where the user lives. (<u>See</u> Knight Decl. II ¶¶ 15-16.)

was not available in California, to which defendants did not respond.  Another entry asked defendants when the vodka would be available in California, to which defendants responded that a distributor had not been appointed "yet" and asked for suggestions.  (See Reidl Decl. ¶¶ 18-19; Knight Decl. I Ex. 2.)

According to defendants, as of August 2, 2011, five of the Facebook users who "like" defendants indicate that they live in California.  Defendants have approximately 254 "fans."  A search on Facebook's search bar for "cupcake vodka" does not result in any mention of defendants or their vodka.  Such a search only results in a page for plaintiff's Cupcake vodka. (See Knight Decl. II ¶¶ 18-19, Ex. B.)

Facebook allows advertising, including advertising based on geography.  (Id. ¶ 17.)  According to defendants, they have not purchased targeted advertising on Facebook "for any country or state, let alone California or the cities that reside in the Eastern District of California."  (Id.)  Further, "at no time ha[ve] [defendants] engaged in paid advertising . . . anywhere outside of the markets where the Desirée vodka products are sold."  (Id. ¶ 20.)

On June 24, 2011, plaintiff filed this action against defendants, asserting claims for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051-1127, and restitution based on unjust enrichment.

II.  Discussion

The plaintiff has the burden of establishing that the court has personal jurisdiction over a defendant.  Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).  Where the court does

1 not hold an evidentiary hearing and the motion is based on
2 written materials, as here, plaintiff need only establish a prima
3 facie showing of jurisdiction.  <u>Schwarzenegger v. Fred Martin</u>
4 <u>Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).  Once a defendant
5 has contradicted allegations contained in the complaint,
6 plaintiff may not rest on the pleadings, but must present
7 admissible evidence which, if true, would support the exercise of
8 personal jurisdiction.  <u>Harris Rutsky & Co. Ins. Servs., Inc. v.</u>
9 <u>Bell & Clements Ltd.</u>, 328 F.3d 1122, 1129 (9th Cir. 2003).
10 Uncontroverted allegations in the Complaint must be taken as true
11 and conflicts between statements contained in affidavits must be
12 resolved in the plaintiff's favor.  <u>Schwarzenegger</u>, 374 F.3d at
13 800.

14          "Where there is no applicable federal statute governing
15 personal jurisdiction, the district court applies the law of the
16 state in which it sits.  California's long-arm jurisdictional
17 statute is coextensive with federal due process requirements."
18 <u>Love v. Associated Newspapers, Ltd.</u>, 611 F.3d 601, 608-09 (9th
19 Cir. 2010) (citing <u>Yahoo! v. La Ligue Contre Le Racisme</u>, 433 F.3d
20 1199, 1205 (9th Cir. 2006) (en banc)); Cal. Code Civ. Proc. §
21 410.10).  "For a court to exercise personal jurisdiction over a
22 nonresident defendant, that defendant must have at least 'minimum
23 contacts' with the relevant forum such that the exercise of
24 jurisdiction 'does not offend traditional notions of fair play
25 and substantial justice.'"  <u>Schwarzenegger</u>, 374 F.3d at 801
26 (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945)).
27 Plaintiff relies only on specific jurisdiction.

28          The Ninth Circuit uses a three-prong test to determine

whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Id. at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)) (internal quotation marks omitted).

"The plaintiff bears the burden of satisfying the first two prongs of the test.  If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state."  Id.  Once the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable."  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)).

A.   Purposeful Direction

"The first prong is satisfied by either purposeful availment or purposeful direction . . . . 'A purposeful availment analysis is most often used in suits sounding in contract.  A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.'"  Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting Schwarzenegger, 374 F.3d at 802).

"Trademark . . . claims are akin to tort claims, and therefore, are analyzed under the purposeful direction test."

One True Vine, LLC v. Liquid Brands LLC, No. C 10-04102, 2011 WL
2148933, at *4 (N.D. Cal. May 31, 2011).  But cf. Adidas Am.,
Inc. v. Bobosky, No. CV 10-603, 2010 WL 4365795, at *4 (D. Or.
Oct. 8, 2010) ("In trademark infringement cases, however, Ninth
Circuit courts have used both purposeful direction and purposeful
availment frameworks simultaneously . . . ."), adopted by Civil
No. 10-603, 2010 WL 4364609 (D. Or. Oct. 28, 2010).

        Plaintiff relies on purposeful direction.  The Ninth
Circuit analyzes purposeful direction using the "Calder effects"
test, originated in Calder v. Jones, 465 U.S. 783 (1984).  See
Brayton Purcell, 606 F.3d at 1128.  Under the effects test,
"[t]he defendant allegedly must have (1) committed an intentional
act, (2) expressly aimed at the forum state, (3) causing harm
that the defendant knows is likely to be suffered in the forum
state."  Id. (quoting Yahoo!, 433 F.3d at 1206) (internal
quotation marks omitted).

        Because the first and third factors are easiest to
address, the court will discuss those factors first before
determining whether defendants expressly aimed at the forum.

    1.  Intentional Act

        "'Intentional act' has a specialized meaning in the
context of the Calder effects test."  Schwarzenegger, 374 F.3d at
806.  A defendant need only have performed "an actual, physical
act in the real world" and need not have intended "to accomplish
a result or consequence of that act."  Id.  Defendants in this
case performed such intentional acts when they designed and
launched their website, registered metatags with Google, created
their Facebook page, and used that page to interact with their

9

1   "fans."  <u>See, e.g.</u>, <u>Purcell</u>, 606 F.3d at 1128 (posting
2   copyrighted material on passive website was an intentional act);
3   <u>Nutrishare, Inc. v. BioRX, L.L.C.</u>, No. 08-1252, 2008 WL 3842946,
4   at *7 (E.D. Cal. Aug. 14, 2008) (using a protected trademark in
5   online advertisements was an intentional act).  The first
6   requirement of the <u>Calder</u> test is met.

7       2.   <u>Defendants Knew Harm Was Likely in California</u>

8        Under the third prong of the <u>Calder</u> test, a plaintiff
9   must show that a defendant has caused harm it "knew was likely to
10  be suffered in the forum state."  <u>Brayton Purcell</u>, 606 F.3d at
11  1131 (citing <u>Yahoo!</u> 433 F.3d at 1206).  "This element is
12  satisfied when defendant's intentional act has 'foreseeable
13  effects' in the forum."  <u>Id.</u> (citing <u>Bancroft</u>, 223 F.3d at 1087).

14       The Ninth Circuit "has repeatedly held that a
15  corporation incurs economic loss, for jurisdictional purposes, in
16  the forum of its principle place of business."  <u>CollegeSource,</u>
17  <u>Inc. v. AcademyOne, Inc.</u>, No. 09-56528, --- F. Supp. 2d ---,
18  ----, 2011 WL 3437040, at *10 (9th Cir. 2011) (citing <u>Dole Food</u>
19  <u>Co., Inc. v. Watts</u>, 303 F.3d 1104, 1113-14 (9th Cir. 2002);
20  <u>Panavision Int'l, L.P. v. Toeppen</u>, 141 F.3d 1482, 1322 n.2 (9th
21  Cir. 1998); <u>Core-Vent Corp. v. Nobel Indus. AB</u>, 11 F.3d 1482,
22  1487 (9th Cir. 1993)).  The injury in a trademark infringement
23  case is the damage to the trademark owner's reputation, <u>see</u> <u>Au-</u>
24  <u>Tomotive Gold Inc. v. Volkswagen of Am., Inc.</u>, 603 F.3d 1133,
25  1137 (9th Cir. 2010), and economic loss caused by intentional
26  infringement of a plaintiff's trademark is foreseeable, <u>see</u>
27  <u>Brayton Purcell</u>, 606 F.3d at 1131 (economic loss caused by
28  intentional copyright infringement is foreseeable).

Plaintiff's principal place of business is in California and it holds trademark rights to the terms "Cupcake" and "Red Velvet" as applied to wine and spirits.  Defendants were made aware of these facts when they received plaintiff's February 2011 letter and, therefore, could know it was likely that they would cause plaintiff harm in the forum.

In response to plaintiff's allegation that defendants have intentionally interfered with plaintiff's trademark, damaging its brand and causing consumer confusion, defendants respond that because they have not sold any products in the forum and are unaware of any sales of their products in the forum, they could not know that plaintiff would suffer harm in the forum. They further claim that for that same reason, a lack of in-forum sales, plaintiff cannot have actually suffered any harm in the forum, foreseeable or not.[3]  The cases, though, make clear that a defendant's out of forum actions may cause a plaintiff likely, foreseeable injury in forum.  <u>Yahoo</u>, 433 F.3d at 1206 (citing <u>Schwarzenegger</u>, 374 F.3d at 803).  The third <u>Calder</u> factor is satisfied.

3.  <u>Express Aiming</u>

The express aiming requirement is met when "the defendant is alleged to have engaged in wrongful conduct targeted

---

[3]  Defendants report that a search on Google for the term "cupcake vodka" yields only results related to plaintiff for the first two pages.  (Knight Decl. II ¶ 14.)  Because the court's ruling does not rely solely on harm caused by defendants' use of metatags, the court will not address the question of whether defendants' submission would shift the burden to plaintiff to submit evidence supporting the challenged allegations, but does point out that defendants did not submit evidence of the results of a similar search for the trademarked term "Red Velvet."

1  at a plaintiff whom the defendant knows to be a resident of the

2  forum state." Dole Food, 303 F.3d at 1111.

3        The invention of the Internet has posed a challenge to

4  traditional jurisdictional analysis and courts have "struggled

5  with the question whether tortious conduct on a nationally

6  accessible website is expressly aimed at any, or all, of the

7  forums in which the website can be viewed." Mavrix Photo Inc. v.

8  Brand Technologies, 647 F.3d 1218, 1229 (9th Cir. 2011) (citing

9  cases).  It is well established that posting information on a

10  passive website alone is insufficient to confer jurisdiction in

11  all states in which that website is be accessed.  Id. at 1229

12  (citing Brayton Purcell, 606 F.3d at 1129).

13        "[O]perating even a passive website in conjunction with

14  'something more'--conduct directly targeting the forum--is

15  sufficient" to establish jurisdiction.  Rio Props, Inc. v. Rio

16  Int'l Interlink, 284 F.3d 1007, 1020 (9th Cir. 2002).  Websites

17  that facilitate and encourage interactions may form the basis for

18  jurisdiction, and this is especially likely to be the case if the

19  interactions are commercial in nature.  Cybersell, Inc. v.

20  Cybersell, Inc., 130 F.3d 414, 419 (9th Cir. 1997) (citing Zippo

21  Manuf. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D.

22  Pa. 1997)).

23        When evaluating whether a non-resident's online

24  activity satisfies the expressly aimed prong of the effects test,

25  courts have considered "the interactivity of the defendant's

26  website, e.g., Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1153-54,

27  1158 (9th Cir. 2006); Cybersell, 130 F.3d at 417-20[,] the

28  geographic scope of the defendant's commercial ambitions, e.g.,

12

1  <u>Pebble Beach</u>, 453 F.3d at 1156-58; <u>Rio Props</u>, 284 F.3d at 1020-

2  21[,] and whether the defendant 'individually targeted' a

3  plaintiff known to be a forum resident, <u>e.g.</u>, <u>Brayton Purcell</u>,

4  606 F.3d at 1129; <u>Pebble Beach</u>, 453 F.3d at 1156-57; <u>Panavision</u>,

5  141 F.3d at 1321-22."  <u>Mavrix Photo</u>, 647 F.3d at 1229.  It is the

6  aggregate effect of a defendant's contacts with the forum that

7  courts consider, not individual acts taken in isolation, to

8  determine if jurisdiction exists.  <u>See Love</u>, 611 F.3d at 606-07.

9  (jurisdiction may be appropriate where there is "a series of

10 ongoing efforts by the defendant to avail itself of the benefits

11 of the [forum] market," but not where defendant has only single,

12 isolated contacts with the forum state unconnected to the

13 tortious act) (quoting <u>Sinatra v. Nat'l Enquirer, Inc.</u>, 854 F.2d

14 1191, 1193 (9th Cir. 1988))); <u>Panavision</u>, 141 F.3d at 1321-22.

15                    i.   <u>Interactivity</u>

16         In <u>Nutrishare</u>, this court found that a website with a

17 discussion board allowing visitors to post messages and chat

18 online with employees of the defendant, a referral section

19 allowing visitors to sign up to become customers, and a "Contact

20 Us" e-mail page allowing visitors to request further information

21 was not interactive enough, on its own, to show express aiming.

22 <u>Nutrishare, Inc.</u>, 2008 WL 3842946, at *8.

23         Defendants' own website is a passive website that

24 allows one-way communication with site users.  <u>Holland Am. Line</u>

25 <u>Inc. v. Wartsila N. Am., Inc.</u>, 485 F.3d 450, 460 (9th Cir. 2007).

26 Website visitors can access advertising material that defendants

27 post, but defendants do not make any sales and there are no

28 interactive features.  There is a "Contact Us" link consumers can

                              13

click on to send an email to defendants, but such features do not make a website "interactive." See Cybersell, 130 F.3d at 416, 419 (website that invited visitors to email defendant was "essentially passive"); Pebble Beach, 453 F.3d at 1154-55 (characterizing website with link allowing users to contact defendant as "passive").  If defendants' website was their only online presence, their online activities would be unlikely to form an adequate basis for jurisdiction in California.

Defendants also maintain a Facebook page for advertising purposes that has several interactive features. Visitors can use the page to post comments and questions on a message board and can sign up to be "fans" of the product. Defendants use the page to respond to questions posted by their "fans," send messages to their fans' Facebook accounts, and solicit applicants for "Brand Ambassador" positions.  While defendants' Facebook page shares some features with the page in Nutrishare, it is both less interactive and less commercial and would therefore be inadequate, standing alone, to show express aiming.  Considered as a part of the totality of circumstances relevant to a jurisdictional inquiry, however, the interactive and commercial nature of defendants' online activities support jurisdiction.

ii.  Scope of Commercial Ambition

Courts have found express aiming where defendants used the Internet and other widely accessible methods of communication to seek commercial benefit in a forum's market.  Compare Brayton Purcell, 606 F.3d at 1130 (express aiming at forum where nothing on law firm's website indicated that its practice area was did

14

1  not include the forum) and Mavrix, 647 F.3d at 1231 ("where . . .
2  a website with national viewership and scope appeals to, and
3  profits from, an audience in a particular state, the site's
4  operators can be said to have 'expressly aimed' at that state")
5  with Schwarzenegger, 374 F.3d at 807 (no express aiming where
6  print advertisement was never circulated in California and
7  defendant had no reason to believe that any Californians would
8  see it).

9       Plaintiff alleges that defendants' goal is to sell its
10 vodka throughout the United States, including in the forum state.
11 Defendants' website indicates that Desirée vodka is "Coming soon"
12 to all fifty states, and it has used its Facebook page to
13 communicate with consumers throughout the country, including
14 forum residents, and has engaged in an unsuccessful discussion
15 with a forum-based distributor.  These facts, again, would be
16 insufficient on their own to confer jurisdiction.  Love, 611 F.3d
17 at 609; One True Vine, 2011 WL 2148933, at *6.  However, they do
18 provide evidence that defendants are "cultivat[ing]. . .
19 nationwide audiences for commercial gain," Mavrix, 647 F.3d at
20 1230, and that California is a part of that desired audience.
21 Cf. Love, 611 F.3d at 609 (no jurisdiction where the defendant's
22 allegedly harmful acts were directed entirely at markets in
23 Ireland and the United Kingdom); Schwarzenegger, 374 F.3d at 807
24 (no jurisdiction where defendant's "express aim was local").

25      Defendants have not made any California sales and,
26 because they do not hold any California licenses, cannot directly
27 make any California sales.  The lack of sales in the forum,
28 however, does not end the inquiry as jurisdiction can be

established in the absence of sales to forum residents.  <u>See</u>
<u>Brayton Purcell</u>, 606 F.3d at 1129-30 (jurisdiction existed even
though defendant law firm had not accepted any forum residents as
clients); <u>CollegeSource, Inc.</u>, 2011 WL 3437040, at *2
(jurisdiction existed even though website had no paying customers
who were forum citizens).  What is significant are defendants'
intentions.  <u>See</u> <u>Schwarzenegger</u>, 374 F.3d at 807.  Defendants'
website indicates that they intend to enter California markets in
the future and to interest prospective California consumers in
their product.  Unlike the defendants in <u>Schwarzenegger</u>, nothing
defendants have said or done indicates that their "express aim"
was directed at forums other than California.  <u>Id.</u>

    "Not all material placed on the Internet is, solely by
virtue of its universal accessibility, expressly aimed at every
state in which it is accessed," <u>Mavrix</u>, 647 F.3d at 1231, but in
this case defendants' business plan is to target all fifty
states, including California.  Defendants placed their website
online with "every reason to believe prospective [customers] in
[the forum] would see the website--indeed, attracting new
business was the point."  <u>Brayton Purcell</u>, 606 F.3d at 1130.
Plaintiff's allegations are enough to suggest that defendants
online activities are intended to attract California consumers
for commercial gain, a fact which supports a finding that
jurisdiction exists.

                iii.  <u>Individual Targeting</u>

    The third factor upon which courts have relied to show
express aiming is individualized targeting of a forum resident.
In the Ninth Circuit, "the 'expressly aimed' prong of the

                            16

purposeful direction test is met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." Love, 611 F.3d at 609 n.4.   The plaintiff must show that the defendant's contacts with forum residents "enable or contribute to the promotion activities that [give] rise to the law suit." Id. at 609.

Plaintiff seems to believe it sufficient to claim that defendants knew that it was located in California and therefore individually targeted it in the forum when it made use of its trademarked material.   However, the expressly aimed prong cannot be satisfied by reciting the same facts used to show that defendant caused harm it knew plaintiff was likely to suffer in the forum state. Pebble Beach, 647 F.3d at 1158; One True Vine, 2011 WL 2148933, at *4 ("[T]he infringement of a plaintiff's intellectual property rights with knowledge that plaintiff's operations are based in the forum and that the harm will be felt there, is insufficient to establish personal jurisdiction without a further showing that the defendant otherwise expressly aimed its activities at the forum.").

In CollegeSource, one website offering college referral services copied material from a competitor's website and posted it on its own site.   Prior to posting the material, the defendant made phone calls and sent emails and letters to the plaintiff seeking to purchase the copied material. CollegeSource, 2011 WL 3437040, at *1-*2.   The court found that these communications were a part of the defendant's efforts to obtain and make commercial use of the plaintiff's copyrighted material and showed

that in posting the infringing materials defendant had
intentionally aimed at the plaintiff in the forum.  Id. at *9.

Defendants, unlike those in CollegeSource, did not have
any contacts with the forum state that enabled or contributed to
their promotional activities.  Plaintiff alleges that defendants
intentionally misused plaintiff's trademarks in order to exploit
its brand and undermine it in California markets.  While such
allegations might be sufficient to create a jurisdictional basis
on an individual targeting theory, defendants contested this
allegation by filing the affidavit of Jerry Knight, in which he
claims that defendants' product line was developed without
reference to plaintiff's and is not part of a scheme to exploit
plaintiff's trademarks.  (Knight Decl. II ¶¶ 7-12)  Once a
defendant has contradicted allegations in the complaint, the
burden is on the plaintiff to present admissible evidence which
would support the challenged allegations, Harris Rutsky, 328 F.3d
at 1129, and plaintiff has not met that burden.  Cf. Brayton
Purcell, 606 F.3d at 1129 (defendant's "conclusory denial"
inadequate to rebut plaintiff's allegation of intentional
copyright violations).  Defendants discussions with a California
distributor did not bear fruit, and so cannot form the basis for
jurisdiction.  See Love, 611 F.3d at 609 (failed discussions with
forum residents did not contribute to the promotion activities
that gave rise to the law suit and so could not form a basis for
jurisdiction).

When each factor is examined in isolation, defendants'
individual actions are insufficient to show express aiming.  When
viewed in the aggregate, however, defendants' national marketing

18

strategy is revealed as, in part, an effort by defendants "to avail itself of the benefits of the [forum] market." Love, 611 F.3d at 609 (quoting Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1193 (9th Cir. 1988)).  As a part of this strategy, defendants employ several websites that they use to interact with customers and potential customers in order to get people excited about their product, whether it is available on store shelves in their state or not.  In these online activities, defendants use material to which a forum resident informed them it held trademark rights.  Although they do not make sales online, defendants' online activities are commercial activities aimed in part at potential customers in the forum.  Because plaintiff's allegations as a whole tend to show express aiming, and therefore are sufficient to meet the effects test, the court will address the remaining prongs of the Ninth Circuit specific jurisdiction test.

     B.   Arising Out Of

          A court cannot establish personal jurisdiction over a defendant unless a plaintiff can show that its claims "arise[] out of the defendant's forum related activities." Panavision, 141 F.3d at 1322.  This requirement is met if the court determines that a plaintiff would not have suffered injury "but for" the conduct directed by the defendant towards the plaintiff in the forum state.  Id.

          Plaintiff alleges that defendants' use of its trademarks was intended to damage the value of those trademarks and to build a national brand by exploiting the goodwill that plaintiff has created.  Although defendants did not specifically

1  target their online advertisements at a particular state, they
2  also did not pursue a regional or state-specific strategy.
3  Instead they targeted all fifty states, including California.
4  Plaintiff claims that defendants' online activities have caused
5  customer confusion and damaged their brand's value.  For the
6  purposes of this motion, the court must take allegations that the
7  defendant has not contradicted as true.  Harris Rutsky, 328 F.3d
8  at 1129.

9       According to plaintiff's allegations, but for the
10  online advertising campaign defendants carried out, it would not
11  have suffered the complained of injuries.  Accordingly, plaintiff
12  has met its burden to allege facts sufficient to show that its
13  claims arise out of defendants' forum related activity, and has
14  satisfied all three factors necessary to establish a prima facie
15  case for specific jurisdiction.

16       C.   Reasonableness

17       Once a plaintiff has established a prima facie case
18  that specific jurisdiction is constitutional, the burden shifts
19  to the defendant to demonstrate why jurisdiction would be
20  unreasonable in light of traditional considerations of fair play
21  and substantial justice.  Dole Food, 303 F.3d at 1114 (citing
22  Burger King, 471 U.S. at 477).  To meet this burden, a defendant
23  must present a "compelling case that the presence of some other
24  considerations would render jurisdiction unreasonable." Roth v.
25  Garcia, 942 F.2d 617, 625 (quoting Shute v. Carnival Cruise
26  Lines, 897 F.2d 377, 386 (9th Cir. 1990)) (emphasis in original).
27  The Ninth Circuit considers seven factors in determining whether
28  jurisdiction would be reasonable: "(1) the extent of the

20

defendant's purposeful injection into the forum state's affairs;
(2) the burden on the defendant of defending in the forum; (3)
the extent of conflict with the sovereignty of the defendant's
state; (4) the forum state's interest in adjudicating the
dispute; (5) the most efficient judicial resolution of the
controversy; (6) the importance of the forum to the plaintiff's
interest in convenient and effective relief; and (7) the
existence of an alternative forum." Caruth v. Int'l
Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995).
Defendants raise arguments related to only factors (2), (4), and
(5).

Defendants are headquartered in Indiana so it is likely
they will be burdened by having to litigate these claims in a
California court.  While it may be more difficult for defendants
to litigate this case in California than it would be to litigate
it in their home state, it will be only marginally more
difficult.  "With the advances in transportation and
telecommunications and the increasing interstate practice of law,
any burden [of litigating in a forum other than one's residence]
is substantially less than in days past." CollegeSource, 2011 WL
3437040, at *12 (citing Menken, 503 F.3d at 1060); see also CE
Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1112 (9th Cir.
2004) (burden on New York resident of litigating in Arizona
weighed only "slightly" in defendant's favor).

It is not clear that a California forum would be
unreasonably inefficient.  Documents and witnesses pertinent to
establishing the facts in dispute may be located in Indiana, but
one of the two full-time employees employed by defendants lives

1  in Illinois, (Knight Decl. II ¶ 12), and plaintiff has indicated

2  that it believes it will need to call several California

3  residents in order to put on its case, (Reidl Decl. ¶ 9).

4  Defendants have not shown that considerations of efficiency

5  dictate that the litigation be removed from California,

6  especially since "this factor is 'no longer weighed heavily given

7  the modern advances in communication and transportation.'"

8  Harris Rutsky, 328 F.3d at 1133 (quoting Panavision Int'l, 141

9  F.3d at 1323).

10        Contrary to defendants' claims, California does have an

11 interest in adjudicating this suit.  Plaintiff alleges that it

12 has been injured by defendants' tortious conduct, and California

13 has an interest in protecting its citizens, of which plaintiff is

14 one, from injury.  Id. ("California maintains a strong interest

15 in providing an effective means for redress for its residents

16 [who are] tortiously injured" (quoting Sinatra, 854 F.2d at

17 1200)).

18        Defendants have not met the "heavy burden" they face

19 "in proving a 'compelling case' of unreasonableness to defeat

20 jurisdiction."  Dole Food, 303 F.3d at 1117.  This is especially

21 true given that exercising jurisdiction in California would not

22 conflict with the sovereignty of the defendant's state.

23 Plaintiff's claims arise under federal law and analysis of those

24 federal claims would be the same in California or in Illinois,

25 therefore defendants would not be held subject to the laws of a

26 foreign jurisdiction.  Panavision, 141 F.3d at 1323.

27        The court additionally notes that the Ninth Circuit has

28 taken a "flexible approach" to personal jurisdiction.  Ochoa v.

22

J.B. Martin and Sons Farms, Inc., 287 F.3d 1182, 1189 n.2 (9th
Cir. 2002) (citing Brand v. Menlove Dodge, 796 F.2d 1070, 1074
(9th Cir. 1986).  Under this flexible approach, personal
jurisdiction "can be established with a lesser showing of minimum
contacts where considerations of reasonableness dictate."  Id.
(citing Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,
784 F.2d 1392, 1397 (9th Cir. 1986)).  "Questions of personal
jurisdiction admit of no simple solutions and . . . ultimately
due process issues of reasonableness and fairness must be decided
on a case-by-case basis."  Davis Moreno Constr., Inc. v. Frontier
Steel Bldgs. Corp., No. CV-08-854, 2009 WL 1476990, at *11 (May
26, 2009, E.D. Cal. 2009) (quoting Forsythe v. Overmyer, 576 F.2d
779, 783 (9th Cir. 1978)).  "Under this analysis, there will be
cases in which the defendant has not purposely directed its
activities at the forum state, but has created sufficient
contacts to allow the state to exercise personal jurisdiction if
such exercise is sufficiently reasonable."  Golden Gate Beverage
Co., Inc. v. DMH Ingredients, Inc., No. 07-2247, 2008 WL 1721903,
at *3 (E.D. Cal. 2008) (quoting Brand, 796 F.2d at 1074).

        Where a defendant has created a website aimed at a
national audience with the express purpose of attracting a
national consumer base, it is not "random" or "fortuitous" for
residents in any one state to come into contact with the
defendants' website.  Mavrix, 647 F.3d at 1231 (distinguishing a
website that deliberately creates and profits from its national
viewership and scope, over whom jurisdiction would be
appropriate, from a local or private internet post not intended
and not expected to be viewed throughout the country).

23

Defendants may not have targeted California markets in their
advertising, but they also did not target their advertising at
specific states or make an effort to exclude California from
their advertising.  Instead, they used technologies giving them
the ability to reach a national audience in an attempt to create
national demand for their product.  It does not seem unreasonable
to hold them nationally accountable.  See Burger King, 471 U.S.
at 473-74 ("[W]here individuals 'purposefully derive benefit'
from their interstate activities, it may well be unfair to allow
them to escape having to account in other States for consequence
that arise predictably from such activities; the Due Process
Clause may not readily be wielded as a territorial shield . . .
." (quoting Kulko v. California Superior Court, 436 U.S. 84, 96
(1978))).

     Defendants have asked that this proceeding be
transferred to the Southern District of Indiana.  Under 28 U.S.C.
§ 1391(b) and (c), in case predicated on federal claims, a
corporate defendant may be subject to jurisdiction in any venue
in which it is subject to personal jurisdiction.  28 U.S.C. §
1391(b)-(c).  As the court has determined that it has personal
jurisdiction over defendants, venue in this court is proper.

     "For the convenience of parties or witness, in the
interest of justice, a district court may transfer any civil
action to any other district . . . ."  28 U.S.C.A. § 1404(a).
There is a strong presumption in favor of a plaintiff's choice of
venue, and that choice will only be disturbed if a defendant can
make a "strong showing" that another venue is more convenient.
Gherebi v. Bush, 352 F.3d 1278, 1302 (9th Cir. 2003) (overruled

24

on other grounds).   In this case, shifting venue to Southern
Indiana would merely transfer the inconvenience of litigating in
another state from plaintiffs to defendants, and neither party
has shown that they would suffer disproportionate inconvenience.
As 28 U.S.C. 1304(a) "provides for transfer to a more convenient
forum, 'not a more likely to prove equally convenient or
inconvenient,'" the court will not order transfer merely to shift
litigation inconveniences from one party to the other.   Id.
(quoting Van Dusen v. Barrack, 376 U.S. 612, 646 (1964).

        IT IS THEREFORE ORDERED that defendants' motion to
dismiss for lack of personal jurisdiction or to transfer for
improper venue be, and the same hereby is, DENIED.

        DATED:   October 5, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE